**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

UNITED STATES OF AMERICA,

Plaintiff,

v.

GORDON ERNST,

Defendant.

Case No. 1:19-cr-10081-IT

**DEFENDANT'S MOTION FOR ORDER RELEASING SEIZED FUNDS FOR NECESSARY LIVING EXPENSES AND LEGAL DEFENSE**

Defendant Gordon Ernst hereby moves this Court, pursuant to the Fifth and Sixth Amendments to the United States Constitution, for an order releasing funds seized by the government to pay for reasonable and necessary living expenses and for his legal defense. Mr. Ernst has significant monthly living expenses that far exceed his family's monthly income and for which his family is dependent on the seized funds to pay. These expenses include those that he is required to pay pursuant to the restraining order issued by this Court on March 7, 2019. Mr. Ernst also has insufficient assets after the government's seizures to pay for his necessary living expenses and legal defense. Access to the seized funds is also essential to Mr. Ernst's ability to fund his living expenses and legal defense. The government cannot establish probable cause to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the Indictment. *See Kaley v. United States*, 571 U.S. 320, 324 at n.3 (2014) (noting that lower courts "have uniformly allowed the defendant to litigate . . . whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to

the crime charged in the indictment," and that the government "agreed that a defendant has a constitutional right to a hearing on that question").

**FACTUAL AND PROCEDURAL BACKGROUND**

Mr. Ernst is charged with one count of racketeering conspiracy pursuant to 18 U.S.C. § 1962(d) in connection with a purported scheme to influence admissions decisions at the university at which he worked. Mr. Ernst was charged by Indictment on March 5, 2019 and was arraigned in this district on March 25, 2019. On March 11, 2019, the government obtained a series of seizure warrants for funds on deposit in four bank accounts owned or controlled by Mr. Ernst. In the affidavit filed in support of the applications for seizure warrants, FBI Special Agent Laura Smith claimed that Mr. Ernst deposited proceeds obtained directly or indirectly as a result of racketeering activity into two accounts at PNC Bank, and that he transferred some of those funds to a brokerage account at Merrill Lynch and to an IRA account at Vanguard. (*See*, *e.g.*, 19-mj-06097-MPK, Dkt. No. 8-1, attached hereto as Exhibit A.). For example, the affidavit alleged that Mr. Ernst transferred $550,000 from the PNC Bank account ending in 6905 into the Merrill Lynch account, and another $200,000 from the same PNC Bank account into the Vanguard account. (*Id.*).

Pursuant to the seizure warrants, the government seized substantially all funds contained in the following accounts:

| Account | Account Holder | Funds Seized[1] |
|---|---|---|
| PNC Checking Acct. No. ******6905 | Gordon [redacted] Ernst | $ 28,681.87 |
| PNC Savings Acct. No. ******6522 | Gordon [redacted] Ernst | $ 18,264.53 |
| Merrill Lynch Brokerage Acct. No. ****8442 | Gordon [redacted] Ernst | $ 650,000.00 |
| Vanguard SEP IRA Acct. No. *********2031 | Gordon Ernst | $ 330,554.12 |

[1] The search warrants sought seizure of all funds on deposit up to $1,138,500 in the PNC Bank savings account, up to $289,983.78 in the PNC checking account, up to $650,000 from the Merrill Lunch bank account, and all funds on deposit in the Vanguard SEP IRA account.

This motion requests the return to Mr. Ernst of seized funds that he contends are neither derived from proceeds traceable to the crime charged in the Indictment or any other completed or attempted offense or involved in a transaction in violation of money laundering statutes. Instead, the seized funds were legitimately earned wages paid to Mr. Ernst [REDACTED] and are not traceable to or involved in the crime alleged in the Indictment. [REDACTED] Mr. Ernst's wages were also deposited into this account, including $[REDACTED] earned since January 1, 2019. (*See* Exhibit C, attached hereto). A significant percentage of the funds that the government alleges Mr. Ernst transferred from the PNC Bank accounts to the Merrill Lynch brokerage account was untainted money earned by Mr. Ernst [REDACTED] through full-time employment and other legitimate sources.

The government has also restrained assets that Mr. Ernst might have otherwise leveraged to pay for his living expenses and legal defense. In addition to seizing the funds deposited in the four accounts listed above, the government sought a restraining order prohibiting Mr. Ernst from leveraging his home in Massachusetts. (Dkt. Nos. 9, 13). On March 7, 2019, this Court issued a restraining order concerning Mr. Ernst's Massachusetts home. (Dkt. No. 13). This order requires Mr. Ernst to maintain the present condition of the property, including by making timely payment of mortgage, utilities, taxes, and assessments. (*Id.*).

Mr. Ernst has an immediate and critical need to access the seized funds. He recently left his employment at the University of Rhode Island, and therefore has no current income. His reasonable and necessary monthly expenses, including the home maintenance, utilities, and

mortgage payments required by the restraining order, far exceed [REDACTED]. (*See* cash flow declaration statement, attached hereto as Exhibit 1 to Exhibit D). Access to the seized funds is therefore crucial for Mr. Ernst to pay his family's ordinary and necessary living expenses.

In addition to the need to pay ordinary and necessary monthly living expenses, access to the seized funds is essential to Mr. Ernst's ability to fund his legal defense. There can be no dispute that this is a complex case that will require significant resources to defend. Mr. Ernst has been charged with participating in a "nationwide college admissions scam" that allegedly involved "dozens of individuals." Press Release, United States Attorney's Office (Mar. 13, 2019), available at https://www.justice.gov/usao-ma/pr/arrests-made-nationwide-college-admissions-scam-alleged-exam-cheating-athletic. At Mr. Ernst's arraignment, the government described Mr. Ernst as being the "top charge . . . in this RICO indictment involving . . . an orchestrated, sophisticated and long-term bribery scheme." (Hearing Tr. 2:7-10, attached hereto as Exhibit E). The Indictment charges 12 defendants with racketeering conspiracy, and the government has charged another 38 defendants with participating in the conspiracy. Given the large number of defendants, and an even larger number of potential witnesses, the volume of the government's discovery productions in this case is reasonably anticipated to be massive. Mr. Ernst's legal fees and associated defense costs are therefore reasonably expected to exceed $250,000.

**ARGUMENT**

**I. Legal Basis for the Requested Post-Restraint Hearing**

Mr. Ernst's interest in paying for ordinary and necessary living expenses until the conclusion of his trial is of "paramount importance." *See United States v. Jones*, 160 F.3d 641, 646 (10th Cir. 1998) (citing *United States v. Harvey*, 814 F.2d 905, 928 (4th Cir. 1987), *rev'd en*

*banc on other grounds*, 837 F.2d 637 (4th Cir. 1988), *aff'd*, *Caplin & Drysdale, Chartered v. United St*ates, 491 U.S. 617 (1989). "A restraining order that prevents a defendant from supporting herself and her family pending and during trial would likely work an injustice with constitutional implications." *United States v. Thier*, 801 F.2d 1463, 1477 (5th Cir. 1986) (Rubin, J., concurring) (suggesting that such a result "shocks the judicial conscience"), *amended by* 809 F.2d 249 (5th Cir. 1987). Courts have held that a defendant is entitled to a hearing where he makes a threshold showing that he has insufficient assets remaining after seizures to pay for necessary living expenses. *See United States v. Kahn*, 890 F.3d 937 (10th Cir. 2018) ("The issue . . . must be whether the unseized assets are adequate to provide 'for reasonable legal and living expenses.' If not, a hearing is justified upon a prima facie showing that seized assets are not traceable to the charged offense.") (quoting *Jones*, 160 F.3d at 649).

A defendant's Sixth Amendment right to the assistance of counsel is also "fundamental." *Luis v. United States*, 136 S.Ct. 1083, 1088, (2016) (quoting *Powell v. Alabama*, 287 U.S. 45, 68 (1932)). "[T]he Sixth Amendment grants a defendant 'a fair opportunity to secure counsel of his own choice.'" *Id.* at 1089 (quoting *Powell*, 287 U.S. at 53; *Caplin & Drysdale, Chartered*, 491 U.S. at 624; *see also United States v. Gonzalez–Lopez*, 548 U.S. 140, 150 (2006). Mr. Ernst has a vital interest in retaining counsel of his choice that is derived from the Sixth Amendment to the Constitution. *See Kaley*, 571 U.S. at 335-38. So essential is this right that it can trump many of the government's competing interests to restrain a defendant's assets. *See United States v. Farmer*, 274 F.3d 800, 804 (4th Cir. 2001). This is so for the most basic of reasons—the accused is presumed innocent, and unless and until the government bears the weighty burden of demonstrating his guilt beyond a reasonable doubt, he may use "wholly legitimate funds" not allegedly involved in the offenses for legal representation of his own choosing. *Id.* To impede

this interest would work a permanent deprivation on Mr. Ernst, as he "needs [his chosen] attorney now if the attorney is to do him any good." *United States v. Moya-Gomez*, 860 F.2d 706, 731 (7th Cir. 1988), *cert. denied*, 492 U.S. 908 (1989).

The procedural mechanism by which a defendant may seek access to funds restrained by the government prior to trial is to request a *Monsanto* hearing. In *United States v. Monsanto*, the Supreme Court held that the pretrial restraint of a defendant's assets is constitutional so long as it is "based on a finding of probable cause to believe that the property will ultimately be proved forfeitable." 491 U.S. 600, 615 (1989). "That determination has two parts, reflecting the requirements for forfeiture under federal law: There must be probable cause to think (1) that the defendant has committed an offense permitting forfeiture, and (2) that the property at issue has the requisite connection to that crime." *Kaley*, 571 U.S. at 323 (citing *Monsanto*, 491 U.S. at 615 n.10).

Although *Monsanto* "declined to consider 'whether the Due Process Clause requires a hearing' to establish either or both of those aspects of forfeitability," the Court in *Kaley* noted that lower courts "have uniformly allowed the defendant to litigate the second issue stated above: whether probable cause exists to believe that the assets in dispute are traceable or otherwise sufficiently related to the crime charged in the indictment." *Id.* at 324.[2] The Court noted that

---

[2] *See, e.g.*, *United States v. Monsanto*, 924 F.2d 1186, 1203 (2d Cir.1991) ("[T]he Fifth and Sixth amendments, considered in combination, require an adversary, post-restraint pretrial hearing as to probable cause that (a) the defendant committed crimes that provide a basis for forfeiture, and (b) the properties specified as forfeitable in the indictment are properly forfeitable, to continue a restraint of assets (i) needed to retain counsel of choice and (ii) ordered ex parte pursuant to 21 U.S.C. §853(e)(1)(A) . . . ."); *United States v. All Funds on Deposit in Account Nos. 94660869, 9948199297, 80007487*, No. 10-CV-4858(BSJ)(JCF), 2012 WL 2900487 at *1 (S.D.N.Y. 2012); *Moya-Gomez*, 860 F.2d at 731; *United States v. Harvey*, 814 F.2d 905, 928 (4th Cir. 1987), *superseded as to other issues*, *In re Forfeiture Hearing as to Caplin & Drysdale*, 837 F.2d 637 (4th Cir. 1988) (*en banc*), *aff'd*, 491 U.S. 617 (1989); *Thier*, 801 F.2d at 1466-70 (holding hearing required as a matter of statutory interpretation), *modified*, 809 F.2d 249 (5th Cir. 1987); *United States v. Crozier*, 777 F.2d 1376, 1383-84 (9th Cir. 1985); *United States v. Lewis*, 759 F.2d 1316, 1324-25 (8th Cir. 1985), *cert. denied*, 474 U.S. 994 (1985); *United States v. Spilotro*, 680 F.2d 612, 616-19 (9th Cir. 1982); *United States v. Long*, 654 F.2d 911, 915-16 (3d Cir. 1981); *United States v. E-Gold, LTD*, 521 F.3d 411, 419 (C.D.C. 2008) (holding that defendants have a right to an adversary post-restraint, pretrial hearing

"[a]t oral argument, the Government agreed that a defendant has a constitutional right to a hearing on that question," and the Court would therefore not opine on the issue. *Id*. at 324, n.3. Having agreed that a defendant possesses a constitutional right to such a hearing, the doctrine of judicial estoppel prevents the government from changing course here.[3]

Many courts have adopted the so-called *Jones-Farmer* rule to determine whether to grant a defendant a *Monsanto* hearing. *See United States vs. Bokhari*, No. 14-CR-30044-MGM, 2015 WL 7303535, at *3 (D. Mass. Nov. 19, 2015). In *United States v. Jones*, 160 F.3d 641, 645 (10th Cir. 1998), the Tenth Circuit held, "[a]s a preliminary matter, a defendant must demonstrate to the court's satisfaction that she has no assets, other than those restrained, with which to retain private counsel and provide for herself and her family." *Jones*, 160 F.3d at 647. In *United States v. Farmer*, the second case underlying this rule, the Fourth Circuit held that at the *Monsanto* hearing, the defendant must "prove by a preponderance of the evidence that the government seized untainted assets without probable cause and that he needs those same assets to hire counsel." 274 F.3d 800, 805 (4th Cir. 2001).

The Court should grant Mr. Ernst a *Monsanto* hearing because Mr. Ernst satisfies the first prong of the *Jones-Farmer* rule by detailing below and in the accompanying affidavits his need for the seized assets, and because he satisfies the second prong by making a *prima facie* showing that the seized assets are not traceable or otherwise involved in the charged offense.

---

for the purpose of establishing whether there was probable cause as to the defendant[s'] guilt and the forfeitability of the specified assets needed for a meaningful exercise of their rights to counsel).

[3] *See*, *e.g*., *Boston Gas Co. v. Century Indem. Co*., 708 F.3d 254, 261 (1st Cir. 2013) ("Judicial estoppel is an equitable doctrine that 'prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an earlier phase of the same legal proceeding'") (*quoting InterGen N.V. v. Grina*, 344 F.3d 134, 144 (1st Cir. 2003)). The "primary purpose" of the doctrine of judicial estoppel "is 'to protect the integrity of the judicial process.'" *Id*., *quoting New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *see also Alternative Sys. Concepts, Inc. v. Synopsis*, *Inc*., 374 F.3d 23, 33 (1st Cir. 2004) ("The doctrine's primary utility is to safeguard the integrity of the courts by preventing parties from improperly manipulating the machinery of the justice system.").

**II. Mr. Ernst Lacks Access to Any Other Assets with Which to Fund His Reasonable and Necessary Living Expenses or His Legal Defense**

Although the First Circuit has not addressed the issue, numerous other circuit courts of appeals have required a defendant seeking a *Monsanto* hearing to make a threshold showing of financial need. *United States vs. Bokhari*, No. 14-CR-30044-MGM, 2015 WL 7303535, at *3 (D. Mass. Nov. 19, 2015) (citing *United States v. Bonventre*, 720 F.3d 126, 129-32 (2d Cir. 2013) (holding that to obtain *Monsanto* hearing, defendant must make sufficient threshold evidentiary showing that he does not have alternative unrestrained assets to fund counsel of choice); *United States v. Holy Land Found. for Relief & Dev*., 493 F.3d 469, 475 (5th Cir. 2007) (*en banc*) (holding that pretrial hearing may be required when defendant claims need for restrained assets to pay counsel or cover ordinary living expenses); *Jones*, 160 F.3d at 647 (holding that a defendant is entitled to a hearing upon a demonstration that there are no assets other than those restrained to pay for counsel and living expenses)).

Here, Mr. Ernst easily satisfies a threshold showing of financial need. Mr. Ernst has submitted herewith a detailed affidavit stating his current assets, liabilities, monthly income, and monthly living expenses. *See* Exhibit D; *United States v. Patel*, 888 F. Supp. 2d 760, 770 (W.D. Va. 2012) (holding that defendant made a sufficient showing by way of "affidavits, documents, bills, and checks . . . which allow[ed] the court to make a meaningful, independent assessment of [the defendant's] current inability to retain counsel without the use of restrained assets."). Mr. Ernst's affidavit demonstrates that the reasonable and necessary monthly expenses incurred by Mr. Ernst's family, including the monthly upkeep required by this Court's restraining order concerning his Massachusetts home, far exceed [redacted]. The only relatively liquid asset that he owns is the value of his retirement account. However, because Mr.

Ernst is not more than 55 years old, any early disbursements from this account would be subject to federal income tax, state income tax, and a ten percent penalty.

Mr. Ernst's affidavit further shows that much of Mr. Ernst's assets are significantly burdened by substantial debt, and that the vast majority of his assets are illiquid and/or not easily liquidated. Even assuming that Mr. Ernst could sell his Maryland home (he cannot sell his Massachusetts condominium in light of the restraining order), its sale will not generate proceeds net of costs and commissions, sufficient for his legal defense. Mr. Ernst has even attempted to borrow funds from [REDACTED] in order to pay for his living expenses and to fund his legal defense. [REDACTED] however, is unable to provide financial support to Mr. Ernst, however. (*See* Affidavit of [REDACTED], attached hereto as Exhibit F). Mr. Ernst's affidavit also makes clear that he lacks access to funds from friends or family sufficient to satisfy his monthly living expenses or mount a constitutionally effective defense to the pending charge. (*See* Exhibit D).

The government is in no position to challenge the contention that extraordinary funds are necessary to defend the instant prosecution. As the government recognizes, Mr. Ernst's case is the "top charge" in the "largest college admissions scam ever prosecuted by the Department of Justice." (See Exhibit E; Statement of United States Attorney Andrew E. Lelling (Mar. 13, 2019), available at https://www.youtube.com/watch?v=Sw7A4aSbCKs). In a case of this magnitude, a defendant with unlimited financial resources could assuredly spend in excess of $250,000 on attorney's fees and defense-related expenses, such as electronic discovery, investigatory, and forensic accounting services. In addition to disputing whether a crime occurred, the parties hold divergent views as to any potential loss amount, which will require significant resources to resolve. The *only* way that Mr. Ernst will

be able to pay for the substantial legal defense that this case requires is to access the seized funds.

**III. There Is No Probable Cause of the Forfeitability of the Seized Funds**

To seize Mr. Ernst's assets, the government relied on Section 1963 of the RICO Act, which authorizes the court, on application of the government, to restrain a defendant's assets pre-trial if those assets are subject to forfeiture under 18 U.S.C. § 1963(a). *See* 18 U.S.C. § 1963(d)(1)(A). The RICO Act authorizes the forfeiture after conviction of, among other things, "any property constituting, or derived from, any proceeds which the defendant obtained directly or indirectly, from racketeering activity . . . ." *Id.* Where, as here, the government alleges predicate acts including money laundering, upon conviction a defendant forfeits property "involved in a transaction or attempted transaction" in violation of money laundering statutes. *See* 18 U.S.C. § 981(a)(1)(A). Thus, courts have held that legitimate funds comingled with illegitimate funds *may* be forfeitable in certain circumstances. *See Bokhari*, 2015 WL 4529611, at *6 (quoting *United States v. Coffman*, 859 F. Supp. 2d 871, 875 (E.D. Ky. 2012). These circumstances include, for example, "where the commingling is for the purpose of disguising the nature, location or source of the illicit funds." *Id*. Property that facilitates money laundering is also forfeitable. Property facilitates money laundering when the property is used to make the money laundering less difficult or more free from obstruction, hinderance, or detection. *Id.* (citing *United States v. McGauley*, 279 F.3d 62, 75–76). However, "facilitation requires that there be a substantial connection between the property and the underlying criminal activity." *Id.* (internal quotations removed).

Here, the government lacks probable cause to believe that the seized funds are traceable to proceeds of a RICO conspiracy. The government alleges that the racketeering conspiracy involving Mr. Ernst transpired between 2012 and 2018. Indictment ¶ 84. Between January 1,

2019, and March 12, 2019, [REDACTED] and Mr. Ernst earned wages totaling $[REDACTED], which were direct deposited into the PNC Bank accounts. (*See* Exhibits B and C, attached hereto). And wages earned by Mr. Ernst [REDACTED] were deposited into the PNC Bank accounts for the duration of the alleged conspiracy, as well as before the alleged conspiracy commenced and after it ended.[4] The deposit of [REDACTED] Ernst's wages into the PNC accounts cannot be claimed to have facilitated any criminal activity. Certainly, wages earned before or after the alleged conspiracy have no connection whatsoever—let alone a "substantial connection"—to the crimes charged. *See Bokhari*, 2015 WL 4529611, at *7. The affidavit filed in support of the application for seizure warrants is devoid of any alleged facts that support the government's claim that Mr. Ernst transferred tainted money, as opposed to money earned from legitimate sources. The government makes no effort to explain why it believes that tainted funds remained in the seized accounts, as opposed to legitimate funds earned by Mr. Ernst [REDACTED]. And the affidavit does nothing to explain the government's theory that the funds transferred from the PNC Bank accounts into the Merrill Lynch were not legitimately earned by Mr. Ernst [REDACTED].

Additionally, the government lacks probable cause to believe that any untainted funds were involved with money laundering. The affidavit supporting the government's application for a seizure warrant contains no alleged facts to support the government's contention that tainted and untainted funds were comingled for the purpose of facilitating money laundering. Rather, the affidavit merely states the bald conclusion that "there is probably cause to believe that the Defendants have comingled bribe money with untainted funds in order to facilitate

---

[4] At the hearing on this motion, Mr. Ernst will be prepared to demonstrate the wages and other legitimate funds deposited into the seized accounts over the course of the alleged conspiracy.

money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i)." (Exhibit A at ¶ 9). The affidavit goes on to claim that Mr. Ernst deposited tainted money into two accounts at PNC Bank, and later transferred money from those accounts to accounts at Merrill Lynch and Vanguard. (*Id.* at ¶¶ 29-44). It is devoid of *any* allegations that support a conclusion that these transfers were made *for the purpose of* concealing the source of purportedly tainted assets. The Indictment does not help the government either. The Indictment includes only conclusory allegations concerning conspiracy to commit money laundering. It does not allege that Mr. Ernst or any of his accounts were actually involved in money laundering.

Without alleging facts to support the government's claim that funds seized from the PNC Bank, Merrill Lynch, and Vanguard accounts were tainted assets, the government cannot establish probable cause to believe that the funds in those accounts are property constituting or derived from proceeds obtained directly or indirectly as a result of racketeering activity. And without alleging facts to support the government's claim that legitimately obtained funds were comingled with illicitly obtained funds for the purpose of concealing the origin of the tainted funds, the government cannot establish probable cause to believe that the seized funds were involved with money laundering. The seized funds should thus be released to Mr. Ernst to permit him to pay for ordinary and necessary living expenses and for his legal defense.

**LOCAL RULE 7.1 CERTIFICATION**

On April 1, 2019, the undersigned counsel conferred with counsel for the government in a good faith attempt to resolve or narrow the issues. The government indicated that it anticipates opposing this motion.

**CONCLUSION**

Wherefore, the defendant requests an evidentiary hearing pursuant to *Kaley* and *Monsanto*, and ultimately an order returning the seized funds to the defendant, such that he can

pay his necessary living expenses and secure the rights and privileges afforded him by the Fifth and Sixth Amendments.

Dated: April 3, 2019

Respectfully submitted,

GORDON ERNST

By his attorney,

*/s/ Seth B. Orkand*
Tracy A. Miner (BBO No. 547137)
Seth B. Orkand (BBO No. 669810)
Miner Orkand Siddall LLP
470 Atlantic Ave, 4th Floor
Boston, MA 02110
Tel.: (617) 273-8421
Fax: (617) 273-8004
tminer@mosllp.com
sorkand@mosllp.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was served by ECF on counsel for the Government on April 3, 2019.

*/s/ Seth B. Orkand*
Seth B. Orkand