UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,                )
                                         )
        Plaintiff,                       )
                                         )
    v.                                   )   Criminal Action No.
                                         )   1:19-cr-10081-IT-1
GORDON ERNST,                            )
                                         )
        Defendant.                       )
                                         )
_____


     BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE


            RULE 11 HEARING BY VIDEOCONFERENCE


                  Monday, October 25, 2021
                       3:07 p.m.






John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts


Robert W. Paschal, RMR, CRR
Official Court Reporter
rwp.reporter@gmail.com

1                         **A P P E A R A N C E S**

2

   On behalf of the Government:

3

        UNITED STATES ATTORNEY'S OFFICE
4       BY:  KRISTEN A. KEARNEY
        One Courthouse Way
5       Suite 9200
        Boston, MA  02210
6       (617) 748-3204
        kristen.kearney@usdoj.gov
7


8

   On behalf of the Defendant:

9

        MINER SIDDALL LLP
10      BY:  TRACY A. MINER
        101 Federal Street
11      Suite 650
        Boston, MA  02110
12      (617) 202-5890
        tminer@msdefenders.com
13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

1
2          (In open court at 3:07 p.m.)
3          THE DEPUTY CLERK:  United States District Court is
4     now in session, the Honorable Judge Indira Talwani presiding.
5          This is Case Number 19-cr-10081, United States
6     versus Gordon Ernst.  Will counsel please identify themselves
7     for the record.
8          MS. KEARNEY:  Good afternoon, Your Honor.  Kristen
9     Kearney for the United States.
10         THE COURT:  Good afternoon.
11         MS. MINER:  Good afternoon, Your Honor.  Tracy
12    Miner for Gordon Ernst --
13         THE COURT:  Good afternoon.
14         MS. MINER:  -- who is present.
15         THE COURT:  And we are here for a Rule 11 hearing;
16    is that correct?
17         MS. MINER:  That is correct.
18         THE COURT:  So let me start -- since we're
19    proceeding by video, let me start with our videoconference
20    waiver here.
21         Mr. Ernst, you're appearing by videoconference with
22    a video link to the courtroom.  Your lawyer, the prosecutor,
23    the courtroom deputy, and the court reporter are appearing by
24    video.  I'm here in the courtroom.  The courtroom is not
25    closed, but there is -- there are no -- there is no one else

1    here but me.

2              If you have any trouble with the video connection,

3    if you cannot hear or see what is happening, let me know,

4    speak up, wave your hand.  I will stop the proceeding and try

5    to take care of it.

6              And is -- is your microphone on so we can hear you?

7              THE DEFENDANT:  (Muted.)

8              THE COURT:  No.  Can you --

9              THE DEPUTY CLERK:  It was on a moment ago.

10             Your Honor, this is Ms. Marchione.  Everything

11   looks like it's uniformly correct.  So maybe if we have

12   Mr. Ernst leave and come back in, that will correct it?

13             MS. MINER:  There should be a toggle at the bottom

14   of -- left-hand bottom of your screen that says, "Join with

15   computer audio."

16             THE COURT:  Okay.  Can we hear you now?

17             THE DEFENDANT:  I think so, Your Honor.  No?

18             THE COURT:  Yes.  Now we can.  Okay.

19             So if you need anything repeated, let me know.

20             The court reporter is preparing a transcript of the

21   proceeding, but no video of the -- no recording of the video

22   itself will be preserved.

23             So you have the right to be physically present in

24   open court for your change of plea, but you can waive that

25   right.  Before I ask whether you intend to waive your right,

you should know the following:

Today is October 25, 2021.  We are experiencing a worldwide epidemic caused by COVID-19.  The President of the United States has declared a state of emergency.  Congress has passed an emergency statute that permits defendants in criminal cases to appear in court by video or telephone for certain types of proceedings under certain circumstances.

Our normal procedure before the emergency was to have all defendants physically present in the courtroom for proceedings such as these.  We are attempting as best as we can to protect the health and safety of court employees, lawyers, defendants, security personnel, and everyone else who is involved with the court system.  At the same time, we are attempting to permit the basic functions of the Court to go forward without unnecessary delays.

The physical appearance of defendants in the courthouse and their travel to and from the courthouse is likely to increase the health risks for all persons involved.  To try to minimize the health risks, among other things, we are giving defendants who prefer to appear in court by video the option to do so.  It is voluntary.  You do not have to appear by video.  If you choose to appear by video, I will ask you to waive your right to be physically present.

You should also know that you have a right to this -- a public proceeding and to have this proceeding

conducted in open court in public view.  Again, our normal procedure before the emergency was to have all such proceedings in open court in public view.  In light of the emergency caused by the pandemic and as announced on our website, we are permitting members of the public to have access to this videoconference by telephone.

Ms. Marchione, do we have members of the public on the line?

THE DEPUTY CLERK:  Yes, Your Honor, we do.

THE COURT:  Okay.  Mr. Ernst, do you understand you have the right to be physically present in open court for your change of plea?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Do you understand you have a right to consult with your lawyer during your change of plea?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Do you understand that if you wish to speak with your lawyer during the change of plea, you just need to let me know, and I will make arrangements for the two of you to have a confidential communication?  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you understand that you have the right to hear and see everything that happens in court during the change of plea, but because we have only a single camera,

1    you can only see part of the courtroom?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you understand that your family

4    members and other supporters have the right to attend this

5    proceeding, but if we proceed by video, they will have to do

6    so by telephone?  Do you understand that?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  Have you consulted with your lawyer

9    concerning waiving your right to appear in person?

10             THE DEFENDANT:  I have.

11             THE COURT:  And do you agree to waive your right to

12   appear in person for your change of plea and appear instead

13   by video?

14             THE DEFENDANT:  Yes, I agree, Your Honor.

15             THE COURT:  And do you also agree that, to the

16   extent that your right to public access to this proceeding is

17   in any way impaired, you waive that right?

18             THE DEFENDANT:  I do.

19             THE COURT:  And to the lawyers, is there any reason

20   I should not accept the waiver?

21             MS. KEARNEY:  No, Your Honor.

22             MS. MINER:  No, Your Honor.

23             THE COURT:  I find that the defendant has knowingly

24   and voluntarily waived his right to appear physically at his

25   change of plea.  I further find that requiring the defendant

1    to be present would jeopardize public health and safety of

2    those who are or would be present during the proceedings and

3    during his travel here.

4            I further find that the measures taken to provide

5    public access to this proceeding are reasonable under the

6    circumstances and that, to the extent that the defendant's

7    right to public access to this proceeding is in any way

8    impaired, the defendant has knowingly and voluntarily waived

9    that right.

10           I further find that delay would harm the interest

11   of justice in this case.  It is a 2019 case, and the -- it is

12   in the interest of justice to move forward at this time.  I

13   accept the waiver and will move forward by videoconference.

14           So, with that, Ms. Marchione, can you please swear

15   in Mr. Ernst?

16           THE DEPUTY CLERK:  Yes, Your Honor.

17           Mr. Ernst, can you please raise your right hand.

18           (Defendant duly sworn)

19           THE DEPUTY CLERK:  Thank you.  Please state your

20   name for the record.

21           THE DEFENDANT:  Gordon Mark Ernst.

22           THE COURT:  Mr. Ernst, do you understand you are

23   now under oath and that if you answer any of my questions

24   falsely, your answers may later be used against you in

25   another prosecution for perjury or making a false statement?

1                  THE DEFENDANT:  Yes, Your Honor.

2                  THE COURT:  And, again, you may consult with your

3      counsel at any point during the course of these proceedings.

4                  Mr. Ernst, how old are you?

5                  THE DEFENDANT:  Fifty-four, Your Honor.

6                  THE COURT:  And what education level have you

7      attained?

8                  THE DEFENDANT:  I finished college.  I got my

9      degree from Brown University in 1990.  I continued my studies

10     at Georgetown, where I did not complete my master's.

11                 THE COURT:  Okay.  And as you appear here today,

12     are you under the influence of any drug or alcoholic beverage

13     of any kind?

14                 THE DEFENDANT:  No, I am not.

15                 THE COURT:  Have you taken any medicine,

16     prescription or otherwise, that could affect your ability to

17     understand these proceedings and to testify truthfully?

18                 THE DEFENDANT:  No, Your Honor.

19                 THE COURT:  Have you received any recent treatment

20     for any mental illnesses of any kind?

21                 THE DEFENDANT:  No, Your Honor.

22                 THE COURT:  Have you received a copy of the second

23     superseding indictment in this case?

24                 THE DEFENDANT:  I have, Your Honor.

25                 THE COURT:  And the second superseding indictment

1    charges you with a number of counts.  And I understand that

2    you're planning to plead guilty to some of these counts, and

3    the Government intends to dismiss the other counts at

4    sentencing.

5              Is that correct, Ms. Kearney?

6              MS. KEARNEY:  Yes, Your Honor.

7              THE COURT:  Okay.  So I'm going to take a little

8    bit more time on the counts that I understand that you're

9    planning to plead guilty to today.  You are charged with --

10   in Count 4, 18 USC Section 371, conspiracy to commit federal

11   programs bribery, in or about 2007 through August 2018.

12             In Count 5, 6, and 7, violation of 18 USC

13   Sections 666 -- sorry -- Section, singular, 666(a)(1)(B),

14   federal programs bribery.  Count 5 is in or about 2014 to

15   2016, Count 6 is in or about 2017 to 2018, and Count 7 is

16   also in or about 2017 to 2018.

17             And in Count 21, violation of 26 USC

18   Section 7206(1), filing a false tax return, on or about

19   March 15, 2018.

20             Do you understand those charges?

21             THE DEFENDANT:  I do, Your Honor.

22             THE COURT:  Do you understand that you're

23   represented by counsel?

24             THE DEFENDANT:  I do, Your Honor.

25             THE COURT:  Have you fully discussed these charges

1   against you and the facts and circumstances of this case with

2   counsel?

3          THE DEFENDANT:  Yes, I have, Your Honor.

4          THE COURT:  And are you fully satisfied with the

5   counsel, representation, and advice given to you in this case

6   by your attorney?

7          THE DEFENDANT:  Yes, I am.

8          THE COURT:  And to counsel, have you communicated

9   all formal offers from the prosecution to accept a plea on

10  terms and conditions that may be favorable to the accused?

11         MS. MINER:  Yes, Your Honor.

12         THE COURT:  And just to -- just to briefly go

13  through the other charges to make sure you understand what

14  those other charges are, Count 2 is conspiracy to commit mail

15  and wire fraud and honest services mail and wire fraud;

16  Count 8, 9, 17 -- sorry -- Count 8 and 9 are wire fraud and

17  honest services wire fraud and aiding and abetting.  Count 17

18  is mail fraud, honest services mail fraud, aiding and

19  abetting.  Count 19 is money laundering, aiding and abetting.

20  And Counts 20 and 22 are both filing false tax returns.

21         And those are the counts that I understand that you

22  are not pleading guilty to today; is that correct?

23         THE DEFENDANT:  Correct, Your Honor.

24         THE COURT:  Okay.  So let's turn to your plea

25  agreement for a minute.  You've entered into a plea agreement

1    with the United States Attorney's Office; is that correct?

2             THE DEFENDANT:  Correct, Your Honor.

3             THE COURT:  And the document I have here is dated

4    September 10, 2021, and it appears to be signed by you on

5    September 13, 2021, and your attorney on September 14, 2021.

6    Is that the plea agreement to which you have entered?

7             THE DEFENDANT:  Yes, Your Honor.

8             THE COURT:  Okay.  Have you had an opportunity to

9    read the agreement and discuss it with your lawyer before you

10   signed it?

11            THE DEFENDANT:  I did so, Your Honor.

12            THE COURT:  And does the plea agreement contain all

13   of the terms to which you have agreed?

14            THE DEFENDANT:  It does, Your Honor.

15            THE COURT:  Do you understand the plea agreement?

16            THE DEFENDANT:  I do, Your Honor.

17            THE COURT:  Do you understand that this agreement

18   is the only agreement you have with the United States

19   Government?

20            THE DEFENDANT:  I understand.

21            THE COURT:  Has anyone made any promises or

22   assurances to you that are not in the plea agreement?

23            THE DEFENDANT:  No, they have not, Your Honor.

24            THE COURT:  Has anyone threatened or pressured you

25   in any way to persuade you to accept this agreement?

1          THE DEFENDANT:  No, they did not, Your Honor.

2          THE COURT:  And do you understand that the terms of

3     the plea agreement as to your sentence are merely

4     recommendations to the Court and that I could reject those

5     recommendations without permitting you to withdraw your

6     guilt -- your plea of guilty, and I could impose a sentence

7     that may be more severe than you anticipate?  Do you

8     understand that?

9          THE DEFENDANT:  I do, Your Honor.

10         THE COURT:  Okay.  And do you understand that the

11    offense to which you're pleading guilty is a felony --

12         THE DEFENDANT:  I do, Your Honor.

13         THE COURT:  -- the offenses are felonies?

14         THE DEFENDANT:  I do, Your Honor.

15         THE COURT:  And do you understand that if I accept

16    your plea, you will be judged guilty of those offenses?

17         THE DEFENDANT:  I understand.

18         THE COURT:  Do you understand that by being judged

19    guilty, you may lose valuable civil rights, including the

20    right to vote in many states, the right to hold public

21    office, to serve on a jury, and the right to possess a gun or

22    any kind of firearm or ammunition?

23         THE DEFENDANT:  I understand, Your Honor.

24         THE COURT:  And you're a United States citizen; is

25    that correct?

1          THE DEFENDANT:  I am.

2          THE COURT:  I want to make sure you understand the

3    maximum and minimum sentences applicable here, and then I

4    will go through and make sure you -- talk about the

5    guidelines.  But let's start first with those penalties.

6          And, Ms. Kearney, do you want to go through the

7    counts at issue?

8          MS. KEARNEY:  Sure, Your Honor.

9          With respect to Count 4, conspiracy to commit

10   federal programs bribery, in violation of Title 18

11   United States Code Section 371, the maximum penalties are

12   five years' imprisonment; three years of supervised release;

13   a $250,000 fine or twice the gross gain or loss from the

14   offense, whichever is greater; restitution; forfeiture; and a

15   $100 special assessment.

16         With respect to Counts 5, 6, and 7, which each

17   charge federal programs bribery, in violation of Title 18

18   United States Code Sections 666(a)(1)(B), the maximum

19   penalties are ten years' imprisonment; three years of

20   supervised release; a fine of $250,000 or twice the gross

21   gain or loss from the offense, whichever is greater;

22   restitution; forfeiture; and a $100 special assessment on

23   each count.

24         With respect to Count 21, filing a false tax

25   return, in violation of Title 26 United States Code -- excuse

1    me -- United States Code Section 7206(1), the maximum

2    penalties are three years' imprisonment, one year of

3    supervised release, a fine of $100,000, restitution, and a

4    $100 special assessment.

5              THE COURT:  And can you please state the

6    disposition that the Government has agreed to recommend under

7    the plea agreement?

8              MS. KEARNEY:  Yes, Your Honor.  The Government has

9    agreed to recommend a sentence of incarceration for a term of

10   not more than 48 months, 24 months of supervised release, a

11   mandatory special assessment of $500, and forfeiture as set

12   forth in the plea agreement.

13             The parties have also agreed about a special

14   condition of supervised release involving cooperation with

15   the examination and collection division of the IRS.

16             THE COURT:  And what about any fine?

17             MS. KEARNEY:  The parties have not -- or excuse

18   me -- the United States has not -- is not recommending a

19   fine.

20             THE COURT:  Okay.  I want to -- I'm going to come

21   back to that, Mr. Ernst, but I want to make sure you

22   understand how the United States sentencing guidelines fit in

23   here and how they may affect your sentence.  Those guidelines

24   have been issued by the United States Sentencing Commission

25   for judges to consider when determining the sentence in a

criminal case.  They're not mandatory.  That means I do not
have to follow them.  They are important.  I do have to
consider them in arriving at your sentence.

Have you and your attorney talked about the
guidelines and how they may apply in this case?

THE DEFENDANT:  Yes, we have, Your Honor.

THE COURT:  Do you understand that I will not be
able to determine your guideline sentence until after the
probation office has prepared a presentence report?

THE DEFENDANT:  I do understand that.

THE COURT:  Do you understand the presentence
report will contain information about you, any criminal
history, the crimes you committed, and other uncharged or
dismissed conduct; and I may consider all of this information
in applying the sentencing guidelines?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  And do you understand you'll have the
chance to challenge any facts reported in the presentence
report, but I need only find these facts to a preponderance
of the evidence?  Do you understand that?

THE DEFENDANT:  I do.

THE COURT:  And do you understand that, although
I'm not required to follow the guidelines, I am required to
consider the applicable guideline sentence before I impose
sentence on you?  Do you understand that?

1          THE DEFENDANT:  I do.

2          THE COURT:  And do you understand that, under the

3    guideline system, I have the authority to depart from the

4    guideline sentence and to impose a sentence that is more or

5    less severe than the guidelines call for?  Do you understand

6    that?

7          THE DEFENDANT:  I understand, Your Honor.

8          THE COURT:  And do you understand that you will not

9    be permitted to withdraw your plea of guilty if your sentence

10   is longer or different than you expect?

11         THE DEFENDANT:  I understand.

12         THE COURT:  So, with that, do you understand that I

13   have the power to give you a term of imprisonment based on

14   the counts that you're pleading guilty hereto of a maximum

15   imprisonment of five years on Count 4, ten years on 5 through

16   7, three years on Count 21; and I have the power to give that

17   sentence, despite the recommendation here, so long as any

18   sentence I impose is reasonable under the circumstances?

19         Do you understand that?

20         THE DEFENDANT:  Yes, Your Honor.

21         THE COURT:  And do you understand that, in addition

22   to a prison term, I'll have the power to give you a term of

23   supervised release of three years on each count, except

24   Count 21, which has a maximum supervised release of one year?

25         Do you understand that?

1          THE DEFENDANT:  I understand, Your Honor.

2          THE COURT:  And do you understand that if you later

3     violate conditions of supervised release, you can be given

4     additional time in prison?

5          THE DEFENDANT:  I do understand that, Your Honor.

6          THE COURT:  Do you understand that, notwithstanding

7     the agreement with the Government, I will have the power to

8     fine you up to 250,000 or twice the gross gain or loss,

9     whichever is greater, for Counts 4, 5 and -- 5 through 7, and

10    up to $100,000 on Count 21, again, so long as the sentence I

11    impose is reasonable under the circumstances?

12          Do you understand that?

13          THE DEFENDANT:  I do understand that, Your Honor.

14          THE COURT:  And do you understand that, in addition

15    to everything else, you will be required to pay $100 special

16    assessment for each count, for a total of $500?

17          THE DEFENDANT:  I understand, Your Honor.

18          THE COURT:  And do you understand that I also will

19    have not only the power, but the obligation to impose

20    forfeiture?  Do you understand that?

21          THE DEFENDANT:  I understand that, Your Honor.

22          THE COURT:  And forfeiture as -- the plea agreement

23    doesn't specify the forfeiture.  It's in the superseding

24    indictment; is that correct?

25          MS. KEARNEY:  The plea agreement also details the

1  forfeiture in Section 7, on page 5.

2  THE COURT:  Do you understand that, under the plea

3  agreement, that the plea agreement specifies a forfeiture

4  of amounts that have been turned over to the United States

5  Marshals Service already in the amount of $276,719 and, in

6  addition, an order of forfeiture in the amount of $3,435,053?

7  Do you understand that?

8  THE DEFENDANT:  I understand that, Your Honor.

9  THE COURT:  Okay.  And do you understand all of

10  these are possible consequences to pleading guilty?

11  THE DEFENDANT:  I understand, Your Honor.

12  THE COURT:  Okay.  So the next thing I need to do

13  is make sure you understand your trial rights that you have

14  and that you'll be giving up by pleading guilty.

15  Do you understand you have the right to plead not

16  guilty to the offense charged against you and to go to trial?

17  THE DEFENDANT:  I -- I understand that, Your Honor.

18  THE COURT:  And do you -- so I'm going to go

19  through all the rights that you have to make sure you

20  understand what you're going to be giving up here.

21  THE DEFENDANT:  Okay.

22  THE COURT:  Do you understand you have the right to

23  a trial by jury?

24  THE DEFENDANT:  I do.

25  THE COURT:  Do you understand a jury is composed of

1    12 jurors who must find beyond a reasonable doubt that you

2    committed the crimes with which you are charged before you

3    may be found guilty?

4              THE DEFENDANT:  I do.

5              THE COURT:  Do you understand at trial you'd be

6    presumed to be innocent, and the Government would have to

7    prove your guilt beyond a reasonable doubt?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you understand at trial you would

10   have the right to the assistance of counsel for your defense?

11             THE DEFENDANT:  Yes.

12             THE COURT:  Do you understand you'd have the right

13   to see and hear all the witnesses against you and have them

14   cross-examined in your defense?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Do you understand you'd have the right,

17   if you chose to exercise it, to testify and to put on

18   evidence in your defense?

19             THE DEFENDANT:  Yes.

20             THE COURT:  Do you understand you'd have the right

21   to require witnesses to come to Court to testify in your

22   defense?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Do you understand you'd have the right

25   to refuse to testify and refuse to put on evidence unless you

1  voluntarily elected to do so?

2            THE DEFENDANT:  Yes.

3            THE COURT:  You understand that if you decided not

4  to testify or not to put on any evidence, those facts could

5  not be used against you?

6            THE DEFENDANT:  Yes.

7            THE COURT:  Do you further understand that by

8  entering a plea of guilty here today, if I accept your plea,

9  there will be no trial, and you will have waived or given up

10 your right to a trial as well as the rights that come with a

11 trial that I have just described?

12           THE DEFENDANT:  I understand, Your Honor.

13           THE COURT:  Okay.  The other thing -- the next

14 thing is that your plea agreement includes a waiver of appeal

15 rights.  And I need to make sure you understand that waiver

16 and first make sure you understand what your appeal rights

17 would be without the waiver so you understand what you're

18 giving up here.  And we'll come to that other point in a

19 minute.

20           Do you understand that, but for the terms set forth

21 in the plea agreement that waives your right to appeal your

22 conviction, you may have been able to argue in a future

23 proceeding, collateral or otherwise, that your conviction

24 should be set aside or reduced?

25           THE DEFENDANT:  Yes.

1          THE COURT:  Do you understand that, but for the

2     terms set forth in the plea agreement that waive your right

3     to appeal your sentence or seek a further reduced sentence in

4     circumstances set forth in those paragraphs, any sentence

5     that I impose could have been appealed by you on direct

6     appeal or challenged in a future proceeding, collateral or

7     otherwise?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Do you understand the following appeal

10    waiver provisions in your plea agreement:  You will not

11    challenge your conviction on direct appeal or in any other

12    proceeding, including a separate civil lawsuit; you will not

13    challenge your sentence, including any court orders related

14    to forfeiture, restitution, fines, or supervised release on

15    direct appeal or in any other proceeding, including a

16    separate civil lawsuit?

17          Do you understand that?

18          THE DEFENDANT:  I understand, Your Honor.

19          THE COURT:  Okay.  And now, for counsel, as you

20    know, the plea agreement that the U.S. Attorney's Office had

21    been using at the time in September has been -- questions

22    have been raised by one of my colleagues.  And it is my

23    understanding that the Government is -- agrees that the

24    reservation of rights for any misconduct that might allow for

25    an appeal is not limited to intentional misconduct.

1          I'm not sure I stated all of that the way -- to get

2    the whole point out, but as written, it says that

3    intentional -- there's a waiver for intentional misconduct.

4    And the question has been raised that that should not be

5    limited to intentional misconduct, just misconduct serious

6    enough.

7          Any disagreement, Ms. Kearney, that that should be

8    amended?

9          MS. KEARNEY:  No, Your Honor.  The Government would

10   propose deleting the word "intentional" from that sentence in

11   the last section -- the last paragraph of Section 5 of the

12   plea agreement.

13         THE COURT:  And, Ms. Miner, I assume you're in

14   accord?

15         MS. MINER:  I am, Your Honor, and we had discussed

16   this in advance.

17         THE COURT:  Okay.  So in paragraph 5, it states,

18   "The parties agree" -- and I'm going to now read it as

19   amended here just so that the record is clear:

20         "The parties agree that, despite giving up these

21   rights, Defendant keeps the right to later claim that his

22   lawyer rendered ineffective assistance of counsel or that the

23   prosecutor or a member of law enforcement involved in the

24   case engaged in misconduct serious enough to entitle

25   Defendant to have his conviction or sentence overturned."

1          Counsel, have I read that correctly?

2          MS. KEARNEY:  Yes, Your Honor.

3          MS. MINER:  Yes, Your Honor.

4          THE COURT:  So that's the agreement.  Mr. Ernst, do

5   you understand that reservation of rights?

6          THE DEFENDANT:  I understand, Your Honor, yeah.

7          THE COURT:  Okay.  So, with that, let's turn to the

8   offenses at issue here.  And I'm going to go through each of

9   the different counts that you're now pleading guilty to and

10  make sure you understand the elements for each of those which

11  the Government would have to prove beyond a -- each of these

12  elements the Government would have to prove beyond a

13  reasonable doubt if the case were to go to trial, and -- make

14  sure you understand those -- and then I'm going to ask the

15  Government about the factual basis for the plea.

16          So for the conspiracy to commit federal programs

17  bribery, the Government would have to prove, if this case

18  were to go to trial, that there was an agreement to commit

19  federal programs bribery; that is, to have an agent of an

20  organization that received federal benefits in excess of

21  $10,000 in a one-year period accept or agree to accept

22  anything of value from any person; that the agent acted

23  corruptly with the intent to be influenced or rewarded in

24  connection with any business transaction or series of

25  transactions; and that the value of the business transaction

or series of transactions was $5,000 or more.  So that's the
first element, is there was such an agreement.

You were a party to or a member of that agreement;
you joined the agreement or conspiracy knowing of its
objectives to commit federal programs bribery and intending
to join together with at least one other conspirator to
achieve that objective.

For the counts -- the federal programs bribery
counts, the Government would have to show you were an agent
of an organization that received federal benefits in excess
of $10,000 in a one-year period; you solicited, demanded,
accepted, or agreed to accept anything of value from another
person; you did so corruptly with the intent to be influenced
or rewarded in connection with some business transaction or
series of transactions of the organization -- here,
Georgetown -- that this business transaction or series of
transactions involved anything of value of $5,000 or more;
and that during each of the one-year periods asserted in the
indictment, the organization received federal benefits in
excess of $10,000.

And then, finally, on Count 21, the elements, you
willfully made or caused to be made and signed an income tax
return for the year in question that was false as to a
material matter, the return contained a written declaration
that it was made under the penalty of perjury, and you did

1    not believe the return to be true and correct as to the

2    material matter in the indictment.  So those are the

3    elements.

4              Ms. Kearney, any disagreement with that statement

5    of the elements?

6              MS. KEARNEY:  Just one addition, Your Honor.  With

7    respect to the elements for conspiracy to commit federal

8    programs bribery, Your Honor mentioned accepting or agreeing

9    to accept a bribe, but I believe it would also include

10   corruptly soliciting or demanding a bribe as well.

11             THE COURT:  I think you're correct, and I did not

12   read it the -- I read it in the first part, but not in the

13   second.

14             So do you understand --

15             And any disagreement, Ms. Miner?

16             MS. MINER:  No, Your Honor.

17             THE COURT:  Mr. Ernst, do you understand that those

18   are the elements the Government would have to prove if

19   this -- if this case went to trial?

20             THE DEFENDANT:  I understand, Your Honor.

21             THE COURT:  Okay.  And so now I'm going to have --

22   Ms. Kearney, if you could please provide the facts that the

23   Government would offer or the evidence the Government would

24   offer if this case were to go to trial.

25             MS. KEARNEY:  Yes, Your Honor.

1          If this case were to proceed to trial, the evidence
2     would show through recorded telephone calls, e-mails,
3     financial records, and witness testimony that the defendant,
4     Gordon Ernst, when he was the head men's and women's tennis
5     coach at Georgetown University, agreed to accept and did
6     accept bribe payments from William Rick Singer and his
7     clients to help secure admission to Georgetown for the
8     children of Singer's clients.

9          The evidence would further show that Ernst did not
10    report all of these payments as income on his federal income
11    taxes.

12         The evidence would show that Georgetown University
13    is a highly selective private university located in
14    Washington, DC.  In each of the years, 2007 through 2019,
15    Georgetown received more than $10,000 in federal Pell Grants.
16    Defendant Ernst worked at Georgetown as the men's and women's
17    tennis coach from 2006 through 2018.

18         In that capacity, Mr. Ernst was responsible for,
19    among other things, recruiting legitimate athletes to play on
20    the Georgetown tennis team.  Georgetown allotted Mr. Ernst
21    six recruitment spots per year to use to recruit legitimate
22    tennis players.  At Georgetown, students recruited for
23    athletic slots have substantially higher admissions prospects
24    than nonrecruited students with similar grades and
25    standardized test scores.

1          During the period 2007 to 2018, Mr. Ernst agreed

2    with Singer and his clients to recruit at least 19 students

3    to the Georgetown tennis team in exchange for bribe payments

4    totalling more than three million.  For example, in or about

5    December 2012, Mr. Ernst used one of his six recruitment

6    slots for that year on the daughter of one of Singer's

7    clients, despite that she did not play tennis competitively,

8    thereby facilitating her admission to Georgetown.

9          Singer's client thereafter paid a total of $275,000

10   to Singer's nonprofit, the Key Worldwide Foundation, or KWF,

11   between April and July 2013.  Singer, in turn, caused KWF to

12   make monthly payments to Ernst totalling $244,000 between

13   September 2012 and September 2013, a portion of which was for

14   the admission of that student.

15         THE COURT:  Ms. Kearney, can I just interrupt you

16   there for one minute?  The monthly payments to Ernst, those

17   went directly to him in his own name or some other way?

18         MS. KEARNEY:  The payments largely went directly to

19   Mr. Ernst.

20         THE COURT:  Not to accounts at the university that

21   he had control over?

22         MS. KEARNEY:  No.

23         THE COURT:  Thank you.  Okay.

24         MS. KEARNEY:  I think one payment over the course

25   of the scheme went to the university, a small payment for

1    tennis courts, but the rest went directly to Mr. Ernst.

2              THE COURT:  And when you say "small," what's the

3    measure of small here?

4              MS. KEARNEY:  I --

5              THE COURT:  Or the factor of it?  I don't need to

6    know the exact dollar, but --

7              MS. KEARNEY:  It was not in the hundreds of

8    thousands of dollars.  I believe it was only $5,000.

9              THE COURT:  Okay.  I'll let you continue.

10             MS. KEARNEY:  Thank you.

11             As another example, on or about August 21, 2015,

12   Mr. Ernst e-mailed his contact in the Georgetown admissions

13   office that he was using one of his six recruitment slots for

14   that year on the son of one of Singer's clients, thereby

15   facilitating his admission to Georgetown.  Ernst used the

16   recruitment slot on the student, despite that the student did

17   not play tennis competitively.

18             At Singer and his associates' direction, on or

19   about April 28, 2016, after the student had been formally

20   admitted to Georgetown, Singer's client issued a check to KWF

21   in the amount of $400,000.  Between on or about September 11,

22   2015, and November 30, 2016, Singer caused KWF to issue

23   checks to Ernst totalling $950,000, representing payments for

24   the purported recruitment of the student and the children of

25   Singer's other clients.

1          Additionally, between in or about 2014 and in or

2     about 2016, Mr. Ernst recruited the student identified in

3     Count 5 as "Georgetown Applicant 3" in exchange for a

4     $200,000 bribe payment from the student's father.

5          Among other things, on or about October 19, 2014,

6     Mr. Ernst e-mailed his contact in the Georgetown admissions

7     office and notified her that he wanted to use one of his

8     recruitment slots on Georgetown Applicant 3 and falsely

9     reported that he had been approached about the student by the

10    student's director of college counseling at her high school.

11         On or about May 8, 2015, the father of Georgetown

12    Applicant 3 withdrew $200,000 from a bank account in Florida

13    and flew to Massachusetts to meet with a middleman who took

14    the funds to pass on to Ernst.  The middleman thereafter met

15    with Mr. Ernst's wife in Falmouth, Massachusetts, where he

16    passed some of the funds to her and kept some for himself.

17         In or about July 2016, Mr. Ernst made plans

18    directly with the father of Georgetown Applicant 3 to meet in

19    Mashpee, Massachusetts, for a further payment.

20         Between in or about 2017 and in or about 2018,

21    Mr. Ernst recruited the student identified in Count 6 as

22    "Georgetown Applicant 4" in exchange for a bribe payment from

23    the student's uncle.  Among other things, the same middleman

24    reached out to Mr. Ernst in or about the summer of 2017 and

25    told him that the student's uncle was willing to pay $100,000

1    if the student was admitted to Georgetown.

2         Mr. Ernst agreed to use one of his recruitment

3    slots to facilitate the student's admission if the student

4    could not get admitted under Georgetown's Early Action

5    program on his own merits.  Among other things, on or about

6    November 15, 2017, Mr. Ernst e-mailed his contact in the

7    Georgetown admissions office that the student was a likely

8    but not yet definite tennis recruit.

9         The student was ultimately admitted early action to

10   Georgetown in the fall of 2017.  In May 2018, the student's

11   uncle wired 110,000 to the middleman, who in turn wired

12   60,000 to Mr. Ernst from the middleman's account in Milton,

13   Massachusetts.

14        In or about August 2018, the middleman met the

15   student's uncle in Philadelphia, where the uncle gave the

16   middleman an additional $50,000 in cash.  The middleman later

17   met Mr. Ernst off of I-495, approximately halfway between

18   Milton and Falmouth, Massachusetts, and gave him some of the

19   funds in cash.

20        Between in or about 2017 and in or about 2018,

21   Mr. Ernst recruited the student identified in Count 7 as

22   "Georgetown Applicant 5" as a tennis player in exchange for a

23   bribe payment from her father.  Among other things, on or

24   about August 31, 2017, the father made a $25,000 payment to

25   Mr. Ernst.  Mr. Ernst thereafter used one of his recruitment

1    slots for the student.

2         The father continued to make payments directly to

3    Mr. Ernst, as well as to Ernst's daughter's private school

4    for her tuition, in exchange for the daughter's recruitment.

5    These payments totaled $220,000, including a payment on or

6    about June 25, 2018, that the father mailed to Mr. Ernst's

7    home on Cape Cod.

8         On or about March 15, 2018 -- excuse me -- Ernst's

9    tax preparer electronically filed Ernst's Form 1040 -- excuse

10   me.

11        On or about March 15, 2018, Ernst's tax preparer

12   electronically filed Ernst's Form 1040 U.S. Individual Income

13   Tax Return for tax year 2017 from Chelmsford, Massachusetts.

14   The return was received at the IRS's Andover services center.

15   That return omitted the $110,000 in bribe payments received

16   from Georgetown Applicant 5's father during tax year 2017.

17        Prior to the filing of his Form 1040, Mr. Ernst

18   electronically signed a Form 8879 IRS e-file signature

19   authorization, which authorized his tax preparer to file his

20   Form 1040.

21        The Form 8879 provided, in relevant part, that,

22   quote, "Under penalties of perjury, I declare that I have

23   examined a copy of my electronic individual income tax return

24   and accompanying schedules and statements for the tax year

25   ending December 31, 2017; and to the best of my knowledge and

1    belief, it is true, correct, and accurately lists all amounts

2    and sources of income I received during the tax year."

3              THE COURT:  Thank you.

4              I'm just looking at the superseding -- second

5    superseding indictment, the scope of the conspiracy for the

6    federal programs bribery.  And I read it that the conspiracy

7    here was limited to the transactions at Georgetown.  Is -- am

8    I reading that correctly, as opposed to the broader

9    conspiracy in the -- some of the other counts?

10             MS. KEARNEY:  Yes, Your Honor, you're reading that

11   correctly.

12             THE COURT:  Okay.  Mr. Ernst, did you understand

13   the facts as recited by the assistant U.S. attorney?

14             THE DEFENDANT:  I did, Your Honor.

15             THE COURT:  And, briefly, what Ms. Kearney

16   recounted was that you had a certain number of spots at

17   Georgetown that, I guess, you could make recommendations for

18   admission and that on the occasions that she described as

19   exemplary, you recommended somebody in return, essentially,

20   for cash that went to you for -- in return for that

21   recommendation that then -- for which the -- following which,

22   the students were then admitted.

23             Any disagreement with the facts as recounted by the

24   assistant U.S. attorney?

25             THE DEFENDANT:  No, Your Honor.

1        THE COURT:  And if you have no dispute with any of

2  those facts, are you in fact guilty of the counts charged?

3        THE DEFENDANT:  Yes, I am, Your Honor.

4        THE COURT:  Defense counsel, is there any reason

5  the Court should not take the change of plea?

6        MS. MINER:  No, Your Honor.

7        THE COURT:  Ms. Marchione, if you could please take

8  the change of plea.

9        THE DEPUTY CLERK:  Yes, Your Honor.

10        Mr. Ernst, you are charged in a second superseding

11  indictment with Count 4, conspiracy to commit federal

12  programs bribery, all in violation of Title 18 United States

13  Code Section 371; Counts 5 through 7, federal programs

14  bribery, all in violation of Title 18 United States Code

15  Section 666(a)(1)(B); and Count 21, filing a false tax

16  return, all in violation of Title 26 United States Code

17  Section 7206(1).

18        You have previously pleaded not guilty to these

19  charges.  Do you now wish to change your plea?

20        THE DEFENDANT:  I do.

21        THE DEPUTY CLERK:  How do you now plead to

22  Counts 4, 5 through 7, and 21, guilty or not guilty?

23        THE DEFENDANT:  Guilty.

24        THE DEPUTY CLERK:  Thank you.

25        THE COURT:  The Court finds that the defendant is

1    fully competent and capable of entering an informed plea;

2    that he is aware of the nature of the charges and the

3    consequences of the plea; and that the plea of guilty is a

4    knowing and voluntary plea supported by an independent basis

5    in fact containing each of the essential elements of the

6    offenses charged.

7            The plea is, therefore, accepted; and the defendant

8    is now judged guilty of these offenses.

9            Okay.  The last thing here is I have -- just want

10   to go over, again, briefly a little more about the

11   presentence report.  The presentence report is going to be

12   prepared by the probation office to assist me in determining

13   your sentence.  You'll be asked to give information for that

14   report.  Your attorney may be present if you wish.

15           It's very important that the report is accurate.

16   It will not only affect what sentence you receive, but also

17   affect what happens to you after you're sentenced.  For

18   example, if you're sent to prison, it will affect where

19   you're sent and what happens to you when you get there.  Even

20   minor mistakes in the report should be corrected.

21           You'll have a chance to read the report, as will

22   your counsel, and to file objections before the time of

23   sentencing.  And both you -- you and your counsel will have

24   the opportunity to speak on your behalf at the time of

25   sentencing.  So I refer you to the probation office for the

1    presentence report.

2            Ms. Marchione, do we have a date for sentencing?

3            THE DEPUTY CLERK:  Yes, Your Honor.  We have

4    March 2, 2022, at 2:30.

5            THE COURT:  I'm sorry; March?

6            THE DEPUTY CLERK:  2nd.

7            THE COURT:  That seems pretty far out.

8            THE DEPUTY CLERK:  And there was a reason,

9    Your Honor.  I did confer with Martha Victoria from

10   probation, and she has several PSRs from this case and other

11   cases that are related, and so I went by the other

12   sentencings that she already has lined up.

13           THE COURT:  Okay.  Any objection from counsel for

14   that date, about that date?  It's pretty far out.

15           MS. MINER:  That's fine, Your Honor.

16           MS. KEARNEY:  No objection, Your Honor.

17           THE COURT:  Okay.  And then I do have -- oh, just

18   to remind counsel, my scheduling order requires memoranda to

19   be filed -- sentencing memoranda to be filed a week prior to

20   sentencing.  If you are unable to do that, you need to notify

21   the Court ahead of time.  I will move sentencing rather than

22   be rushed in going through the sentencing material.

23           So I do have a -- I believe I have a report from

24   probation that all of the terms of release have been complied

25   with thus far, and so I am -- unless there's any objection to

1    continuing the same -- continuing release on the same

2    terms -- any objection to that?

3                 MS. KEARNEY:  No objection.

4                 THE COURT:  Ms. Miner, any objection?

5                 MS. MINER:  No objection.  I'm sorry.  We're

6    perfectly fine.

7                 THE COURT:  Based on the information provided to me

8    by the probation office, I do find by clear and convincing

9    evidence that Mr. Ernst is not likely to flee or pose a

10   danger to any other person or the community if released

11   pending sentencing; and, therefore, he will be released, or

12   remain released, on the agreed-upon conditions.

13                Mr. Ernst, I do need to let you know that violating

14   any of those conditions of release may result in an immediate

15   issuance of a warrant for your arrest, revocation of release,

16   order of detention, forfeiture of bond, and prosecution for

17   contempt of court and could result in imprisonment, fine, or

18   both.

19                And if while on release you commit a federal

20   felony, the punishment is an additional prison term of not

21   more than ten years; for a federal misdemeanor offense,

22   punishment is an additional prison term of not more than one

23   year; and that any such sentence would be consecutive to any

24   other sentence you receive.

25                And if after release you knowingly fail to appear

1    as the conditions of release require or to surrender to serve

2    a sentence, you may be prosecuted for failure to appear or

3    surrender; and, again, additional punishment may be imposed,

4    and that would be consecutive to any other sentence you

5    receive.

6            So, with that, I will see everyone in May.  Thank

7    you very much -- no.

8            THE DEPUTY CLERK:  March.

9            THE COURT:  Sorry.  No wonder I thought it was so

10   bad.  That's the reason why I was wondering.  March?

11           THE DEPUTY CLERK:  March 2nd, Your Honor.

12           THE COURT:  I will see everyone in March.

13           THE DEFENDANT:  Thank you, Your Honor.

14           MS. KEARNEY:  Thank you, Your Honor.

15           MS. MINER:  Thank you, Your Honor.

16           THE COURT:  Thank you.  We are in recess.

17           (Court in recess at 3:57 p.m.)

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

1

2

3

4          I, Robert W. Paschal, Registered Merit Reporter and

5   Certified Realtime Reporter, in and for the United States

6   District Court for the District of Massachusetts, do hereby

7   certify that pursuant to Section 753, Title 28, United States

8   Code, the foregoing pages are a true and correct transcript

9   of the stenographically reported proceedings held in the

10  above-entitled matter and that the transcript page format is

11  in conformance with the regulations of the Judicial

12  Conference of the United States.

13

14                          Dated this 9th day of November, 2021.

15

16

17

18

19                          /s/ Robert W. Paschal

20                          _____

                            ROBERT W. PASCHAL, RMR, CRR
21                          Official Court Reporter

22

23

24

25