UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> v.                                               ) <br> ) <br> GORDON ERNST,                       ) <br> ) <br> Defendant                          ) | Criminal No. 19-10081-IT |

# GOVERNMENT'S SENTENCING MEMORANDUM

Gordon Ernst, the former head men's and women's tennis coach at Georgetown University, was one of the most prolific co-conspirators in the collective "college admissions" cases. In addition to conspiring with William "Rick" Singer and others to designate at least 19 of Singer's clients as tennis recruits in exchange for bribes, Ernst also accepted bribes from non-Singer families in exchange for recruiting at least three other students to Georgetown's tennis team. Ernst's involvement in the schemes spanned ten years, and he regularly used at least two, and often as many as five, of the six recruitment slots Georgetown allotted him each year to recruit unqualified students in exchange for bribe payments. In total, Ernst accepted nearly $3.5 million in bribe payments, at least $2 million more than any other coach or administrator charged in the college admissions cases. With the exception of one $5,000 payment to Georgetown, *all* of that money went to Ernst's pocket, and he failed to pay taxes on a substantial portion of it. When the Georgetown admissions office began to uncover Ernst's wrongdoing, Ernst lied to Georgetown and sought to cast blame on an admissions officer and two students in an effort to cover up his actions. And, even after he was terminated from Georgetown, Ernst continued to collect bribe payments. For his actions, the government respectfully recommends that Ernst be sentenced to a

term of 48 months in prison and 24 months of supervised release, and that he be ordered to forfeit $3,435,053.78 in criminal proceeds.

## I. Overview of the Offense Conduct

Ernst became the head men's and women's tennis coach at Georgetown in 2006. Less than two years later, he began accepting bribe payments in exchange for designating students as tennis recruits. PSR ¶¶ 47-49. Over the next ten years, until Georgetown discovered what Ernst was doing and terminated him, Ernst designated *at least* 19 of Singer's students as tennis recruits, thereby facilitating their admission to the university.[1] *Id.* ¶ 46; *see also id.* ¶¶ 47-109. During that time, Ernst also agreed to designate three other students (unrelated to Singer) as tennis recruits, in exchange for bribe payments from their families. *Id.* ¶¶ 118-135.

From the outset, Ernst took the money personally: first, from parent Douglas Hodge, who has pleaded guilty for his role in the offense, and later funneled through the façade of Singer's sham charity, the Key Worldwide Foundation ("KWF"). *Id.* ¶¶ 47-109. He also accepted cash payments directly from other parents and through a second middleman, Tim Donovan.[2] *Id.* ¶¶ 118-135.

Following the recruitment of two of Hodge's children in 2008 and 2010, respectively, Ernst began using at least two, and often as many as five, of his six recruitment slots per year in exchange for bribe payments. Between the fall of 2011 and the spring of 2014, Ernst used two of six slots

---

[1] The government has only been able to obtain bank records as far back as May 2011. Those records indicate that, by that time, Singer was already paying Ernst between $18,000 and $24,000 per month, PSR ¶ 53, suggesting that Ernst had already done bribery deals with Singer by that time. Those are in addition to two deals Ernst did with Singer for the children of co-conspirator Douglas Hodge, in 2008 and 2010, for which Hodge paid Ernst directly. *Id.* ¶¶ 49, 51-52.

[2] Additionally, Singer caused KWF to issue one $5,000 cashier's check to Georgetown Tennis on or about November 8, 2013, at the same time Ernst was designating the child of an uncharged parent as a tennis recruit. PSR ¶ 69.

on Singer students. *Id.* ¶¶ 47-71. By the fall of 2014, Ernst was using five of his six allocated slots in exchange for bribe payments—a practice that continued through the spring of 2016. *Id.* ¶¶ 72-94, 118-124. Ernst temporarily used only two of his six recruitment slots in exchange for bribe payments in the 2016-2017 application year, but then promptly returned to his prior pace and agreed to use five of his six slots in exchange for bribes in 2017-2018. *Id.* ¶¶ 95-109, 125-135. Even after Georgetown terminated him in February 2018, Ernst continued to demand bribe payments from Robert Repella, a parent who has pleaded guilty to conspiracy to commit mail fraud and honest services mail fraud as a result of his role in the offense, and from another parent who has not been charged. *Id.* ¶¶ 129, 135.

When, in December 2017, a Georgetown admissions officer suspected irregularities and began to question Ernst's recruitment of a student whose high school was unaware that she played tennis, Ernst sought to pass the blame to the admissions officer, calling her "unprofessional" and making himself appear to be the victim of misrepresentations by his recruits. *Id.* ¶ 110. He further lied about the tennis ability of the students he had recruited, calling one a "5 star recruit" (that is, a top tennis recruit) despite the fact that she was unranked (in other words, a "0 star recruit"). *Id.* ¶ 110. After Georgetown launched a formal internal investigation, Ernst doubled down on his lies, claiming (falsely) that he had never accepted payment in exchange for designating students as tennis recruits, that certain Singer students did not come to his attention through Singer, and that he expected other students (who were fake recruits tied to Singer) to play. *Id.* ¶¶ 111-113.

Over his ten years conspiring with Singer and others, Ernst received close to $3.5 million in exchange for designating 22 students as tennis recruits.[3] *Id.* ¶¶ 136-138. Ernst did not declare

---

[3] Singer did not pay Ernst for two of those students because the fraud was uncovered, and the students withdrew their applications.

3

$390,000 of that amount on his taxes, resulting in a tax loss of approximately $145,000. *Id.* ¶¶ 139-143.

## II.     The Applicable Sentencing Guidelines

The parties and the Probation Office agree that Ernst's total offense level under the Sentencing Guidelines is 29. That calculation reflects a base offense level of 12 under Section 2C1.1(a)(2); a 2-level increase under Section 2C1.1(b)(1) because Ernst accepted more than one bribe; a 16-level increase under Sections 2C1.1(b)(2) and 2B1.1(b)(1)(F) because the value of the bribe payments was more than $1.5 million but not more than $3.5 million; a 2-level increase under Section 3B1.3, because Ernst abused a position of trust in a manner that significantly facilitated the commission or concealment of the offense; and a 3-level decrease pursuant to Section 3E1.1 for acceptance of responsibility.[4] The resulting Guidelines sentencing range is between 87 to 108 months. Under the terms of the plea agreement, the government has agreed not to seek a sentence greater than 48 months, and Ernst has agreed not to seek a sentence of less than 12 months.

## III.    Sentencing Recommendation

The government respectfully submits that the relevant factors under Section 3553(a) support the imposition of a meaningful sentence of incarceration that exceeds those imposed on other coaches sentenced in the college admissions cases to date. The government recommends a term of 48 months in prison.

Ernst's criminal conduct was lengthy, pervasive, and highly profitable. He designated or agreed to designate at least 22 students as tennis recruits. The only coach or administrator involved

---

[4] Ernst's tax crimes do not increase his Guidelines calculation. U.S.S.G. § 3D1.4; *see also* PSR ¶¶ 160-169.

in facilitating more fake recruitments was Donna Heinel, a senior athletics administrator at the University of Southern California. In contrast to Heinel, however, Ernst took nearly *all* of the bribe payments—close to $3.5 million—into his own pocket. At all times, Ernst's motivation was enriching himself at the expense of Georgetown and its applicants. The one other coach sentenced to date who took all of the bribe payments personally—Jorge Salcedo, who was sentenced to 8 months in prison—was nowhere near as prolific, having recruited, or agreed to recruit, three students, in exchange for $200,000, barely 5 percent of the amount Ernst received. Given the drastic difference in the number of times Ernst agreed to recruit students in exchange for bribe payments (more than 7 times as many as Salcedo) and the amount of money Ernst took from the scheme (more than 17 times as much as Salcedo), a significantly longer sentence is warranted.

What is more, Ernst's scheming extended well beyond his association with Singer. Ernst agreed to accept bribes from at least three families unrelated to Singer in exchange for using recruiting slots on their children. In the process, Ernst received an additional half million dollars in bribe payments. In one of those instances, Ernst collected the bribe even though, unbeknownst to the parent, the student was able to gain admission on his own merits—demonstrating the depth of Ernst's corruption.

Ernst also played an active role in the fraud. In addition to designating students as fake recruits, Ernst had communications directly with parents about how to hide the fraud. He encouraged the students' participation in the misconduct by having them send him emails in which they falsely described their desire to play on his team, which Ernst forwarded to Admissions. At one point, when a Georgetown admissions officer questioned the fact that a student's application did not mention tennis, Ernst fabricated a lie to explain the discrepancy. He also agreed with

5

Singer to solicit other coaches to recruit unqualified athletes, though none of them agreed to participate.

Moreover, unlike the parents charged in related cases, Ernst cannot claim to have acted out of a desire to help his own children gain admission to college. Instead, as a coach, Ernst violated his duty to his team and to his school, abusing his position—and the university's trust—out of self-interest. In the process, he helped to undermine the very integrity of the higher education system, which already favors those with money and privilege. And he did so on a breathtaking scale, regularly using five of his six recruitment slots in exchange for bribes. His raw greed and repeated betrayal of his team and his school warrant a significantly greater sentence than those imposed in this case thus far.

A significant sentence of imprisonment is also warranted to deter Ernst from engaging in additional fraudulent conduct. While Ernst ultimately pleaded guilty, he was slow to accept responsibility for his actions. He did not sign a plea agreement until September 2021, more than 2.5 years after he was initially charged. The only coach or administrator to plead later was Heinel. More egregious, however, is that when Georgetown first began to uncover his misconduct, Ernst lied and attempted to place the blame on an admissions officer, claiming that she had acted unprofessionally when she spoke to a student's high school about whether the student played tennis. He even attempted to blame two of the students he was falsely recruiting by claiming that they misrepresented themselves to him. He also denied that he had ever accepted money in exchange for recruiting a student, which delayed the discovery of the full scope of his wrongdoing. When given opportunities to own up to his criminal conduct, Ernst repeatedly failed to do so. Thus, while it is unlikely that Ernst will ever again be in a position to designate students as fake athletic recruits, he will almost certainly be presented with opportunities in which he will need to

6

choose between doing what is right and engaging in fraud or lying, and a meaningful term of imprisonment will have the necessary specific deterrent effect to ensure that Ernst does not violate the law again.

Considerations of general deterrence also counsel in favor of a meaningful sentence. As this case makes clear, it is all too easy for coaches to solicit and accept bribe payments in exchange for recruiting purported athletes, and it is difficult for universities, and criminal authorities, to detect and prove such fraud. Ernst was able to get away with fraud and bribery for more than ten years, using the bulk of his recruitment slots on fake athletes and successfully escaping detection even after Georgetown began to suspect wrongdoing.

The need to avoid unwarranted sentencing disparities also supports a lengthy period of incarceration. As noted above, the co-conspirator most closely comparable to Ernst, other than Singer and Heinel (who have not yet been sentenced), was Jorge Salcedo, who received a sentence of 8 months in prison for conduct that was meaningfully less extensive. Ernst's conduct is also considerably more egregious than the parents of students that Ernst recruited (who have received shorter sentences than the government seeks here) not merely because it was far broader in scope and duration, but also because he personally violated his duty to Georgetown and willingly abused his position of trust to corrupt the system of higher education.[5] Indeed, the average sentence

---

[5] For example, Stephen Semprevivo was sentenced to a term of 4 months for agreeing to pay $400,000 for Ernst to designate his son as a tennis recruit; Elizabeth and Manuel Henriquez were sentenced to terms of 7 months and 6 months, respectively, for agreeing to pay $400,000 for Ernst to designate their daughter as a tennis recruit, in addition to paying Singer to arrange for cheating on their daughters' college entrance exams; and Douglas Hodge was sentenced to 9 months for agreeing to pay $325,000 for Ernst to designate two of his children as tennis recruits, in addition to agreeing to pay additional sums to Singer to arrange for side door deals for two of his other children. Elisabeth Kimmel and Peter Dameris were also sentenced for their respective roles in bribing Ernst to recruit their children, and the sentences they received (6 weeks incarceration followed by 12 months of home confinement, and 12 months of home confinement,

imposed on parents who engaged in the fraudulent athletic recruitment of their children across the college admissions cases has been approximately 3 months' incarceration per child.[6] The government's recommended sentence of 48 months for Ernst takes account of, and compares favorably to, that average: just over 2 months for each of the 22 fake athletes he agreed to recruit in exchange for bribe payments.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court sentence Ernst to a term of imprisonment of 48 months, followed by two years of supervised release, forfeiture of $3,435,053.78, and a $500 special assessment.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By: */s/ Kristen A. Kearney*
KRISTEN A. KEARNEY
LESLIE A. WRIGHT
IAN J. STEARNS
STEPHEN E. FRANK
Assistant United States Attorneys

Date: June 24, 2022

---

respectively) reflected their very unique personal and health circumstances, and accordingly do not provide relevant comparisons.

[6] The longest sentence imposed to date in the collective college admissions cases was 15 months' incarceration for parent John Wilson, who participated in the athletic recruitment scheme three times and, like Ernst, engaged in tax fraud. Where Ernst's conduct was substantially more extensive than Wilson, a substantially longer sentence is warranted.

**Certificate of Service**

    I hereby certify that the foregoing document was served through the ECF system on all registered participants in this action on June 24, 2022.

                                       By:    */s/ Kristen A. Kearney*
                                                      KRISTEN A. KEARNEY
                                                      Assistant United States Attorney